# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

JAMES GUY,

|  |  |  |  |
|---|---|---|---|
| | Petitioner, | : | Case No. 2:20-cv-5459 |
| | | | |
| | | | District Judge Sarah D. Morrison |
| -  vs  - | | | Magistrate Judge Michael R. Merz |

WARDEN,
  Ross Correctional Institution

|  |  |  |
|---|---|---|
| | Defendant. | : |

---

# REPORT AND RECOMMENDATIONS

---

This habeas corpus action, brought *pro se* by Petitioner James Guy under 28 U.S.C. § 2254, is before the Court for decision on the Amended Petition (ECF No. 17), the State Court Record (ECF No. 18), the Return of Writ (ECF No. 19), and Petitioner's Traverse (ECF No. 27).

**Litigation History**

On October 27, 2014, the Franklin County Grand Jury indicted Guy on one count of Kidnapping in violation of Ohio Revised Code § 2905.01 with a firearm specification (Count 1); two counts of Trafficking in Heroin in violation of Ohio Revised Code § 2925.03 (committed in the vicinity of a school) and with two firearm specifications (Counts 2 and 3); and one count of Having Weapons While Under Disability in violation of Ohio Revised Code § 2923.13 (Count 6). (Indictment, Case No. 14CR5721, State Court Record, ECF No 18, Exhibit 1).  The first trial ended in a hung jury.

1

Guy was reindicted on February 12, 2016, on one count of Kidnapping in violation of Ohio Revised Code § R.C. 2905.01 with two firearm specifications (Count 2); two counts of Trafficking in Heroin in violation of Ohio Revised Code § 2925.03; one committed in the vicinity of a school, one committed in the vicinity of a juvenile or school, one with one firearm specification and one with two firearm specifications (Counts 5 and 8); one count of Possession of Heroin in violation of Ohio Revised Code § R.C. 2925.11 with one firearm specification (Count 11); and two counts of Having Weapons While Under Disability in violation of Ohio Revised Code § 2923.13 (Counts 17 and 18). (Indictment, Case No. 16CR772, State Court Record, ECF No. 18, Exhibit 8).

Trial commenced on February 21, 2017, with co-defendant (and brother) Isaiah Guy aka "Zay." Having waived counsel, represented himself and attorney Mark Collins served as an advisor to him. On March 2, 2017, the jury found Guy guilty as charged on Counts 2, 3, 4, and 5. (Verdict Forms, State Court Record, ECF No. 18, Ex. 16).  Having denied Petitioner's motions for judgment of acquittal and for new trial, the court sentenced him to an aggregate term of twenty years imprisonment.  (Sentencing Entry, State Court Record, ECF No. 18, Ex. 21).

With appointed counsel, Guy appealed to the Ohio Tenth District Court of Appeals which affirmed the conviction.  *State v. Guy*, 2018-Ohio-4836 (Ohio App. 10th Dist. Dec. 6, 2018), appellate jurisdiction declined, 155 Ohio St. 3d 1407 (2019), cert. den. sub. nom. *Guy v. Ohio,* 140 S. Ct. 169 (2019).

Asserting ineffective assistance of appellate counsel, Guy filed an Application to Reopen his direct appeal under Ohio R. App. P. 26(B) on March 4, 2019 (State Court Record, ECF No. 18, Ex. 35).  The Tenth District denied the Application. *Id.* at Ex. 38.  The Supreme Court of Ohio declined to exercise appellate jurisdiction.  *State v. Guy*, 156 Ohio St. 3d 1497 (21019).

Guy filed his original petition for Writ of Habeas Corpus in October 2020.  With permission from Magistrate Judge Vascura, Guy filed an Amended Petition on April 2, 2021, pleading the following Grounds for Relief:

**Ground A:**  Petitioner is actually innocent of the crimes for which he was convicted and the evidence was insufficient to support the conviction. PageID 185

**Ground B:**  The trial court erred in allowing ineffective assistance of counsel when counsel professes a disbelief in their client's innocence. PageID 187

**Ground C:**  A verdict cannot be sustained when there were evidentiary and factual inaccuracies with the identification of the defendant. PageID 189.

**Ground D:**  A trial court errs in allowing a juror to remain when that juror is biased and an objection is made to their remaining. PageID 193.

**Ground E:**  a trial court errs in allowing hearsay when the true evidence is kept from the court and the defense under the guise of technical malfunction. PageID 195

**Ground F:**  A trial court errs in allowing the introduction of evidence pertaining to the defendant's religion when the probative value is less than the prejudicial effect. PageID 196

**Ground G:**  A trial court errs in allowing jail calls and identification of the speaker contrary to the rules of evidence. PageID 197

**Ground H:**  The rule 29 motion for acquittal was improperly denied and thus the defendant was not afforded the proper directed verdict. PageID 200

**Ground I:** There needs to be a resentencing when the law and the factors of felony sentencing are inconsistent with the sentence imposed. PageID 204

      **Ground J:** The motion for a new trial should have been granted. PageID 211

      **Ground K:** Ineffective assistance of counsel: failure to present - effective suppression motion. PageID 213

      **Ground K(a):** Ineffective assistance of appellate counsel.

      **Ground L:** Ineffective assistance of appellate counsel: failure to prsent [sic] the above claims or to effectively present them. PageID 222.

Although this is the way Petitioner presented his claims in the Amended Petition, in his Traverse he has voluntarily abandoned all claims that he does not argue in that pleading (Traverse, ECF No. 27, PageID 2616). He also has re-numbered the claims on which he continues to seek relief. This Report will use the numbering in the Traverse. Petitioner also argues the claims out of numerical order, but the Report will analyze them in the order in which they appear in the Petition.

# Analysis

### Grounds A and H: Actual Innocence and Insufficiency of the Evidence
### (Argued in the Traverse as Ground Eight (ECF No. 27, PageID 2625, et seq.)

In Ground A, Petitioner claims he is actually innocent; in Grounds A and H he asserts he was convicted on insufficient evidence. The actual innocence claim is abandoned in the Traverse.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d

987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

Petitioner presented his sufficiency of the evidence claims to the Tenth District on direct appeal as his Seventh Assignment of Error and the court decided the claim as follows:

### D. Sufficiency of the evidence

[*40]  In his seventh assignment of error, James asserts the trial court erred by denying his Crim.R. 29 motion for acquittal. Because a Crim.R. 29 motion questions the sufficiency of the evidence, we apply the same standard of review on appeal as in a challenge to the sufficiency of the evidence. *State v. Kearns,* 10th Dist. No. 15AP-244, 2016-Ohio- 5941, ¶ 44, 71 N.E.3d 681. "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing

*State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997- Ohio 52, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Where the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," it is sufficient to sustain a conviction. Id. "The testimony of a single witness, if believed by the finder of fact, is sufficient to support a criminal conviction." *State v. Booker*, 10th Dist. No. 15AP-42, 2015-Ohio-5118, ¶ 18. See also *State v. Conkel*, 10th Dist. No. 08AP-845, 2009-Ohio-2852, ¶ 14, citing *State v. Ruhlman*, 12th Dist. No. CA2005-05-125, 2006-Ohio-2137, ¶ 26 (for the proposition that the testimony of a victim as to the elements of sexual assault, if believed, is sufficient to establish the elements of the offense).

 [*41] James argues the state failed to establish the detective was kidnapped during the transaction on October 16th. The statute defining the offense of kidnapping provides, in relevant part, that no person shall restrain the liberty of another person for the purpose of facilitating the commission of any felony or flight thereafter. R.C. 2905.01(A)(2). The detective testified that during the transaction on October 16th, James suggested the detective might be a police officer and attempted to pat him down. When the detective refused to be searched and stepped toward the door, Isaiah blocked his exit. James then pointed a gun at the detective and told him to step away from the door. After the detective admitted to having a gun, which he surrendered to James, the situation deescalated and the transaction was completed. This evidence, viewed in the light most favorable to the prosecution, is sufficient to establish that James restrained the detective's liberty for the purpose of ensuring he was not a police officer, which facilitated the commission of the felony crime of heroin trafficking.

 [*42] With respect to the heroin trafficking and possession charges, James argues there was no evidence that he sold heroin or prepared heroin for sale and no evidence that he possessed heroin. James

7

claims the only evidence was that the individual identified as "Zay" possessed and sold drugs.

 [*43]  Under the principle of complicity, an individual may be found guilty if he solicits, aids, abets, or conspires with another individual to commit an offense and shares the criminal intent of the individual who commits the principal offense. *State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796 (2001), syllabus; *State v. Moore*, 10th Dist. No. 10AP-10, 2010-Ohio- 4322, ¶ 17. An accomplice's intent may be inferred from the circumstances surrounding the crime. *Johnson* at syllabus. A charge of complicity may be stated in terms of R.C. 2923.03 or in terms of the principal offense, and a defendant charged with an offense may be convicted of that offense upon proof he was complicit in its commission even if the indictment against the defendant is stated in terms of the principal offense. *State v. Horton*, 10th Dist. No. 13AP-855, 2014-Ohio-2785, ¶ 8.

 [*44]  The statute prohibiting drug trafficking provides that no person shall knowingly sell or offer to sell a controlled substance or prepare a controlled substance for shipment, transport, or distribution. R.C. 2925.03(A). The statute prohibiting drug possession provides that no person shall knowingly obtain, possess, or use a controlled substance. R.C. 2925.11(A). The detective testified Isaiah sold him heroin on October 16th, and there was evidence presented to establish that the material sold to the detective on that date was heroin. As noted above, the detective testified James was present during the transaction and the evidence was sufficient to establish that James aided and abetted the transaction by attempting to ensure the detective was not a police officer. With respect to the heroin possession and trafficking charges arising from the evidence obtained pursuant to the search warrant on October 17th, there was evidence that heroin and packaging paraphernalia were recovered from 72 South Wheatland. The detective testified that James had been at 72 South Wheatland on October 16th and was present on October 17th when the search warrant was executed. The presence of items commonly used in drug trafficking may constitute circumstantial evidence of drug trafficking. *State v. Saunders*, 10th Dist. No. 13AP-668, 2014-Ohio-1746, ¶ 20. Similarly, circumstantial evidence may be sufficient to support a

finding of constructive possession of drugs. *State v. Hurse*, 10th Dist. No. 14AP-687, 2015-Ohio-2656, ¶ 21. Viewing the evidence presented at trial in the light most favorable to the prosecution, a rational juror could find that all the essential elements of drug possession and trafficking had been proven beyond a reasonable doubt.

[*45] Accordingly, we overrule James's seventh assignment of error.

*State v. Guy, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

In this case the Tenth District plainly decided Petitioner's insufficiency of the evidence claims on the merits.  To prevail on those claims, then, he must show that the Tenth District's decision is an objectively unreasonable application of *Jackson.* Guy understands that this is his burden and undertakes to meet it.

Although he had argued before the Tenth District that there was insufficient evidence to support his kidnapping conviction, he abandons that claim in the Traverse and merely argues there was insufficient evidence to support the drug convictions arising from seizure of drugs on the seventeenth of October.  He claims the drugs were found in a place in the residence where he was not present when the search warrant was executed, some other person's identification was with

them. and the State did not prove they were part of the same "batch" as the drugs purchased on the sixteenth.  This recitation omits some important facts:  Guy stands convicted of kidnapping Detective Jordrey on the sixteenth in an effort to aid and abet the sale of drugs, particularly by voicing his suspicion that Jordrey was a police officer and using a firearm to enforce a pat down. He was found in the same drug house the next day when the police returned with the search warrant.

Guy relies on constructive possession cases from the Sixth Circuit Court of Appeals, *United States v. Bailey*, 553 F.3d 940 (6th Cir. 2009); *United States v. Pena,* 983 F.2d 71 (6th Cir. 1993) and *United States v. Craig*, 522 F.2d 29 (6th Cir. 1975).  *Bailey* discusses what is necessary to prove constructive possession of a thing (in Bailey's case a firearm) as a matter of federal statutory law.  Nothing in Judge Moore's opinion or in Guy's argument here suggests that the same requirements are imposed on the States as a matter of federal constitutional law; indeed, the Constitution is not mentioned in Judge Moore's opinion.  *Pena* and *Craig* are also cases applying the federal statutory law of constructive possession, and not the United States Constitution.  To prevail Petitioner must show the Tenth District's decision is an unreasonable application of clearly established constitutional precedent of the Supreme Court.

Furthermore, the Tenth District did not rely solely on Petitioner's presence at 72 South Wheatland on the 17th, but held it was proper to construe that evidence together with Petitioner's presence at the same location the day before when he assisted his brother in trafficking in heroin by holding a gun on Detective Jordrey.

Because the Tenth District's decision is an objectively reasonable application of *Jackson*, it is entitled to deference.  Therefore Petitioner's  insufficiency of the evidence claim is without merit and should be dismissed.

**Ground D:  Failure to Excuse a Biased Juror**
**(Argued in the Traverse as Ground Four, PageID 2616-23).**

In Ground D/Four, Petitioner claims his right to a fair and impartial jury was violated when a juror who was biased was seated and participated in returning a verdict.

Guy raised this claim as his Third Assignment of Error on direct appeal and the Tenth District decided it as follows:

### B. Consideration of potentially-biased juror

 [*23]  In his third assignment of error, James asserts he was deprived of a fair trial with an impartial jury because the judge retained a juror whom James alleges was potentially biased. James argues the juror in question had two potential bases for bias and the trial judge only examined her about one. At the beginning of voir dire, the judge recognized the juror and noted the juror was "my very good friend's mother-in-law, the grandmother of her children." (Tr. Vol. I at 51-52.) The judge asked the juror whether she could be an impartial juror in the case given her personal knowledge of the judge. The juror responded that she was fine. The following day, during a conference in chambers, the court informed the parties that this same juror's son was best friends with an undercover police officer who had been convicted and imprisoned based on actions he took in his official capacity. The judge noted that the juror indicated on her jury questionnaire that she did not have close friends or relatives who were police officers, and that the judge did not know what, if any, personal relationship the juror had with the convicted officer. James's counsel also indicated during the conference that he had represented the convicted officer. During this conference, none of the parties indicated they had concerns with the juror remaining on the panel and trial resumed.

 [*24]  The following day, in a conference held outside the presence of the jury, James requested the juror be removed from the jury and replaced with an alternate juror. The judge indicated the juror had already been questioned about whether her personal familiarity with the judge would affect the juror's ability to be impartial. With respect to the potential conflict arising from the juror's son's relationship

with the convicted undercover police officer, the judge noted the juror did not raise her hand when the prosecutor asked during voir dire whether any potential juror had a relative or friend that was a police officer. Likewise, the juror answered no on the jury questionnaire question that asked whether she had a friend or relationship with a police officer. The trial judge further noted that James had not objected the day before when the issue had initially been raised. In light of those circumstances, the judge indicated she would not remove the juror at that point in the trial.

 [*25]  On appeal, James acknowledges he failed to object when the issue related to the convicted undercover police officer was initially raised and that the trial court's decision to retain the juror at that time is subject to plain error review.  Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error exists when there is an obvious defect in the trial proceedings that affects substantial rights. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240 (2002). A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. We note that James subsequently raised the issue before the trial was complete. The trial court's decision not to remove the juror due to bias once James objected is subject to abuse of discretion review. An abuse of discretion occurs when a decision is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 5 Ohio B. 481, 450 N.E.2d 1140 (1983).

 [*26]  Crim.R. 24(C)(9) provides that a juror may be challenged for cause when she is "possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial." In this case, the juror's potential bias arose not from her own personal relationship, but rather from her son's friendship with a convicted former undercover police officer. The trial judge did not question the juror directly about any potential bias arising from this

relationship, but considered the other evidence available, including the juror's answers to the jury questionnaire and during voir dire. The judge made the parties aware of the issue out of an abundance of caution, and we cannot conclude she committed plain error by failing to remove the juror when none of the parties initially objected. Likewise, we cannot conclude the judge abused her discretion by refusing to remove the juror when James subsequently objected, because she considered the evidence available and was satisfied that there was no indication the issue would affect the juror's impartiality.

[*27] Accordingly, we overrule appellant's third assignment of error.

*State v. Guy, supra.*

Respondent asserts this claim is procedurally defaulted by Guy's failure to make a contemporaneous objection at trial.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v.*

*Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009).  This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004).  "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)].  The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine.  See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020), citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.

14

. . . .

Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).  A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error.  *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Petitioner acknowledges that Ohio has a relevant procedural rule which requires a contemporaneous objection to error (Traverse, ECF No. 27, PageID 2616, citing *Osborne v. Ohio*, 495 U.S. 103, 124 (1990)).  He also notes that the Sixth Circuit has repeatedly upheld Ohio's contemporaneous objection rule as an adequate and independent state procedural ground of decision. *Id.* at PageID 2617 citing *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005), *Awkal v. Mitchell,* 613 F.3d 629, 648-649 (6th Cir. 2010) (citing *Lundgren v. Mitchell.* 440 F.3d 754, 765 (6th Cir. 2006)); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). *Mason v. Brunsman,* 483 Fed. Appx. 122, 130-31 (6th Cir. 2012), *cert. denied* , 133 S. Ct. 447, 184 L. Ed. 2d 273 (2012); see also *Shafer v. Wilson*, 364 Fed. Appx. 940, 945 (6th Cir. 2010), *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011).

However, Guy asserts:

> In every instance where the state court enforces and habeas court's follows the contemporaneous objection rule, there has always been a silent record as to an objection on the record as it relates to a specific issue. However, that is not what happened in this case."
>
> . . .
>
> If there was an objection on the record and acknowledged by the state appellate court and the state court reached the merits of the claim under that appropriate standard of review, then the contemporaneous objection rule does not apply.

*Id.* at PageID 2617-18.

Guy does not dispute the Tenth District's findings of fact about how the potential bias of which he complains came to light. First of all during voir dire the trial judge revealed that one of the potential jurors was the mother-in-law of one of the judge's best friends. *State v. Guy, supra,* at ¶ 23. The juror indicated this would not affect her judgment and neither party objected to her being on the jury. *Id.* The next day in a chambers conference the judge revealed that a son of this same juror was best friends with an undercover police officer who had been convicted and was imprisoned. *Id.* Again, no one objected and the trial resumed.

It was only on the next day, the third day of trial, that Guy asked that the juror be removed. *Id.* On direct appeal, Guy had acknowledged, contrary to the position he now takes, that plain error review applied because he had failed to make a contemporaneous objection. *Id.* at ¶ 25. The trial judge notice the absence of a prior objection when denying removal of the juror. *Id.* at ¶ 24.

Thus it is plain that both the trial judge and the Tenth District actually enforced the contemporaneous objection rule. But Guy argues the rule does not apply when an objection has been noted on the record sometime during trial. Petitioner's examples do not prove his point. In *Osborne, supra*, where the Supreme Court upheld application of the contemporaneous objection rule, the error was in jury instructions to which no objection was made. There is no indication in the opinion that a later objection would have saved the claim.

*Biros, supra,* was a capital case in which the Sixth Circuit enforced Ohio's contemporaneous objection rule against a claim that it was neither firmly established nor regularly followed. The opinion gives no indication Biros could have avoided the default by making a non-contemporaneous objection.

*Awkal, supra*, is also a capital case in which the Sixth Circuit, sitting en banc, held petitioner forfeited a prosecutorial misconduct claim by making no contemporaneous objection and the Supreme Court of Ohio reviewed only for plain error. Again there is no indication Awkal could have escaped the default by making a non-contemporaneous objection. *Hinkle, supra,* is to the same effect. The Ohio Court of appeals enforced the contemporaneous objection rule and the Sixth Circuit upheld the procedural default.

In each of Guy's examples, the contemporaneous objection rule was enforced and there is no evidence that a non-contemporaneous objection was made. It is a logical fallacy to infer that if a non-contemporaneous objections had been made, the rule would not have been enforced. Guy gives no examples of where that happened or any Ohio case law which says it would be effective.

It is well established that plain error review is an enforcement of a procedural default and not a waiver of it. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

Guy waived his juror bias claim by failing to make a contemporaneous objection and he has not shown excusing cause and prejudice. His Ground Four/D juror bias claim should therefore be dismissed.

**Ground Six/F: Allowance of Prejudicial Evidence of Petitioner's Religion**

In his Sixth Ground for Relief, Petitioner claims the trial judge improperly allowed evidence of his Muslim religion, the prejudicial effect of which outweighed its probative value. He presented this claim relating to the Tenth District as his Fifth Assignment of Error and the court decided the claim as follows:

> [*31] In his fifth assignment of error, James asserts the trial court erred by allowing the state to introduce evidence of his religious affiliation. James argues any probative value of this evidence was substantially outweighed by the risk of undue prejudice.

> [*32] Under the Ohio Rules of Evidence, relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Relevant evidence is generally admissible, except where otherwise provided by the constitution, statutes, or rules. Evid.R. 402. Evid.R. 403(A) provides that relevant evidence is not admissible if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

> [*33] Exclusion of relevant evidence based on undue prejudice requires more than mere prejudice, because anything adverse to a party's case could be deemed prejudicial to that party. *State v. Crotts,* 104 Ohio St.3d 432, 2004-Ohio-6550, ¶ 8, 820 N.E.2d 302. "'Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial.'" Id. at ¶ 24, quoting *Oberlin v. Akron Gen. Med. Ctr.,* 91 Ohio St.3d 169, 172, 2001-Ohio-248, 743 N.E.2d 890 (2001).

> [*34] In one of the jail call recordings played for the jury, James explained he did not eat pork because he practiced the religion of Islam, and further explained he became a Muslim based on his

affiliation with the Black P. Stone organization. The detective testified that Black P. Stone is a criminal gang based in Chicago, Illinois and Los Angeles, California. He testified it would not be uncommon for gang members to refer to each other by the generic term "Stone," and that members of other gangs such as the Bloods and the Crips used similar generic nicknames when greeting each other. James argues references to him being a Muslim and being part of a criminal gang created a risk of unfair prejudice that outweighed the probative value of this evidence.

 [*35]  As discussed further below, the issue of identity was a key element of James's defense. The detective testified that during the October 16th transaction, "Zay" introduced the second individual present as his "brother Stone." Thus, evidence linking James to the Black P. Stone organization and establishing that members of the organization might be referred to generically as "Stone" was relevant to establishing that James was the individual introduced to the detective as "brother Stone." Although the explanation that the Black P. Stone organization was affiliated with the religion of Islam was not directly relevant to establishing James's identity, in the context of the particular recording it would have been very difficult to redact James's references to his religion because they were interwoven within the discussion of the organization. The few passing references to James's religious affiliation were not the type of evidence that would evoke a sense of horror or appeal to the jury's instinct to punish. Therefore, the trial court did not abuse its discretion by allowing the state to introduce these portions of the jail call recording.

*State v. Guy, supra.*

Respondent argues that Guy presented this claim to the Ohio courts as a question of Ohio evidence law and that therefore no federal constitutional claim was fairly presented. Guy responds that "the claim as raised in the state court did allege a denial of a specific constitutional right, that is, a First Amendment violation," although Guy does not cite any place in the State Court Record where this claim was made (Traverse, ECF No. 27, PageID 2623).

On direct appeal the exact wording of Guy's Fifth Assignment of Error was "A trial court errs in allowing the introduction of evidence pertaining to the defendant's religion when the probative value is less than the prejudicial effect."  (Appellant's Brief, State Court Record, ECF No. 18, PageID 343). Appellate counsel's entire argument on this point was:

> Herein, the State introduced evidence that James was Muslim and part of a Muslim brotherhood they likened to the Bloods and Crips. *Trial Vol III Tr.* 480; 561. In this post 9-11 era, evidence of being Muslim and part of a terroristlike group is prejudicial. James's rights were violated, as was his freedom of association. *First Amendment.* For the State to convict a man based on his religious and group affiliations is unconstitutional. This highlights the State's problem: they use terrorism-centric vernacular to describe James and his affiliation in order to convict him. The First Amendment guarantees freedom of religion and association. *First Amendment.* Even in this post 9-11 era, Muslims deserve the protections of the rules of evidence and the Constitution. The State portrayed James as a Muslim terrorist and the Court allowed it over objection.

*Id.* at PageID 371-72.

First of all, this is not an "argument" that the First Amendment prohibits what the State did here.  Federal courts have regularly held that mere incantation of talismanic phrases from the Constitution such as "due process" or "fairs trial" do not constitute an argument.  *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

Second, even if a First Amendment issue was fairly presented, there is no clearly established Supreme Court precedent which holds that mention of a defendant's religion constitutes violation of the First Amendment.  To put it another way, no decision of the Supreme Court prohibits admission of a statement voluntarily made by a defendant that he became a Muslim as a result of being part of an organization identified by other uncontested testimony as a criminal gang.  To put it another way, one cannot hide membership in a criminal gang by claiming it resulted in one's adherence to a religion.

Third, the claim that the State portrayed Guy as a member of a terrorist organization grossly misstates the record.  He was portrayed as a member of a criminal gang like the Bloods and Crips from Los Angeles.  Criminal gangs are not notably more desirable than terrorist groups, but they are different types of groups posing different kinds of threats to public order.  The only mention of Guy's religion is in his own recorded call from jail;  there was no attempt by the prosecutors to excite possible jury prejudice against Muslims.

Lastly, the Tenth District's decision of the evidence question presented to it does not violate clearly established federal law.  Because Guy's identity was a key issue at trial, it was important to explain his brother-co-defendant's use of the phrase "brother Stone."  Petitioner's membership in that criminal organization was clearly relevant and his admission of membership in the jail call probably the best evidence of that membership[1].  The call recording was not admitted willy-nilly.

---

[1] Guy claims reference to Black P. Stone was prejudicial because what "Respondent failed to realize is that the founder of the Black Peace Stone Organization Jeff Fort is currently serving a life sentence in the federal super max prison for allegations of domestic terrorist charges. Furthermore, the Black Peace Stone Organization itself has once been on the Federal Terrorist watch list."  Petitioner points to no place in the State Court Record where these facts were testified to and this Court is limited to facts before the state courts.  *Cullen v. Pinholster*, 563 U.S. 170 (2011).  More importantly, there is no evidence the jury would have had any idea of these facts and thus no basis for concluding a member of Black P. Stone was a terrorist.

Instead, the parties discussed redaction, but the reference to Islam was found to be too entwined with discussion of Black P. Stone to be practicable.  Guy does not dispute that finding of fact.

It is undoubtedly true that an effort to convict a person by appealing to assumed jury prejudice against a group the person belongs to would make a trial unfair, particularly if the group were a religious faith.  But that is not what happened here.

Petitioner's Ground Six is without merit and should be dismissed.

**Ground Ten/J: The trial court abused its discretion in denying the Petitioner's motion for new trial.**

Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).   "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

Ground Ten/J does not state a claim upon which habeas corpus relief can be granted.  In the first place, there is no federal constitutional right to a new trial of a state criminal charge. *Herrera v. Collins*, 506 U.S. 390, 408-11 (1993).  And a claim that a state judge abused her or his discretion also does not state a claim for habeas corpus relief.  *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995).

Ground Ten/J should therefore be dismissed.

**Ground Thirteen/K(a)(1): Ineffective Assistance of Appellate Counsel for failure to plead as an assignment of error that the trial court abused its discretion by failing to grant a continuance or impose sanctions on the prosecution due to untimely disclosure of discovery material.**

This claim is made in handwritten pages of the Amended Petition (ECF No. 17, PageID 216-19).

Petitioner asserts that by raising this claim as an omitted assignment of error in his App. R. 26(B) Application preserves the underlying claim for consideration one the merits in this Court.

> In this case, the Petitioner did in fact preserve the claim of ineffective assistance of appellate counsel in the state court by the filling of the App. R. 26(B) application and preserving the claim that the trial court abused its discretion by failing to grant a continuance or impose sanctions on the prosecution due to untimely disclosure of discovery material that appellate counsel failed to raise on appeal.

(Traverse, ECF No. 27, PageID 2633).

The first half of this assertion is true: Petitioner has preserved his ineffective assistance of appellate counsel claim for consideration in this Court. But the second half is not: Raising a claim as an omitted assignment of error in an application for reopening the direct appeal does not preserve that assignment of error for merit review in habeas. Instead, it only preserves the ineffective assistance of appellate counsel claim for such review. "Neither *[State v.] Murnahan* nor App. R. 26(B) was intended as an open invitation for persons sentenced to long periods of incarceration to concoct new theories of ineffective assistance of appellate counsel in order to have a new round of appeals." *State v. Reddick* 72 Ohio St.3d 88, 90-91, 1995-Ohio-249 (1995). "In light of the requirements of Rule 26(B), the [appellate] court's holding must be read as pertaining to the merits' of [petitioner's] ineffective assistance of appellate counsel claim, not his state procedural rule claim." *Roberts v. Carter,* 337 F.3d 609 (6th Cir. 2003).

23

On the other hand, ineffective assistance of appellate counsel can constitute cause to excuse a failure to raise a claim on direct appeal.  However, the ineffective assistance claim cannot be presented as cause if it was itself procedurally defaulted in the state courts, unless one of the standard excuses for that procedural default exists, to wit, actual innocence or cause and prejudice. *Edwards v. Carpenter*, 529 U.S. 446 (2000).

Guy raised this claim as part of his Application for Reopening under Ohio R. App. P. 26(B)(State Court Record, ECF No. 18, Ex. 35) and the Tenth District decided his ineffective assistance of appellate counsel claim on the merits *Id.* at Ex. 38.  It held:

> {15} In his first proposed assignment of error, Guy asserts the trial court abused its discretion by failing to grant a continuance or impose sanctions on the prosecution due to an untimely disclosure of discovery material. On the fourth day of trial, the prosecution provided Guy with a packet of discovery that had not been previously disclosed. The prosecutors indicated they received the material earlier that morning and did not intend to introduce it into evidence. The trial court took a recess of approximately 90 minutes to provide Guy with an opportunity to review the newly provided material. Following the recess, Guy did not request a continuance or additional time to review the material, but moved to dismiss or for sanctions, arguing the material could have been used to impeach the state's witnesses.  Specifically, Guy argued the material contradicted the lead police detective's testimony as to whether the police knew that a child was present at the location where Guy was arrested. The prosecutor argued the proper remedy for any discovery violation resulting from the untimely disclosure would be to provide Guy with additional time to review the materials. The trial court denied Guy's motion for dismissal or sanctions, noting the reports included in the late disclosure, which indicated SWAT team members may have been aware there was a child in the residence, did not contradict the testimony of the lead detective, who was not part of the SWAT team that conducted the raid and testified he did not know whether there was a child in the residence.
>
> {16} A trial court has discretion under Crim.R. 16 to determine the appropriate response to a failure to disclose discoverable material.

24

*State v. Wiles*, 59 Ohio St.3d 71, 78 (1991). Crim.R. 16(L)(1) provides that "[i]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with [Crim.R. 16] or with an order issued pursuant to [Crim.R. 16], the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material disclosed, or it may make such other order as it deems just under the circumstances." A trial court's decision on an appropriate sanction, if any, under Crim.R. 16 is subject to review for abuse of discretion. *Wiles* at 78. "Prosecutorial violations of Crim.R. 16 require reversal only when the defendant demonstrates that: (1) the prosecution's failure to disclose was willful, (2) disclosure of the information prior to trial would have aided the defense, and (3) the defendant suffered prejudice." *State v. Bruce*, 10th Dist. No. 07AP-355, 2008-Ohio-4370, ¶ 70.

{¶17} Guy did not request a continuance after receiving the untimely disclosed material, instead moving for dismissal or other sanctions. Thus, he forfeited the argument on appeal that the trial court should have granted a continuance. Had the issue been raised on direct appeal, this court would have been limited to considering whether the trial court abused its discretion in denying Guy's motion to dismiss or for sanctions. In support of his first proposed assignment of error, Guy reiterates the argument he presented to the trial court i.e., that the untimely disclosed material would have allowed him to impeach the lead detective regarding the circumstances of the raid that resulted in Guy's arrest and the detective's identification of Guy as a suspect. However, as noted in our prior decision, Guy challenged the lead detective's testimony extensively during the trial and challenged his conviction as being against the manifest weight of the evidence on appeal. See *Guy* at ¶ 46-51. Moreover, we note the trial court's suggestion that the untimely disclosed material would have been of little use in impeaching the lead detective's testimony because it did not contradict that testimony. Given this record, Guy has failed to demonstrate that dismissal or other sanctions would have been a proper remedy for the untimely disclosure. Therefore, Guy failed to demonstrate a reasonable probability of success if the first proposed assignment of error had been asserted on appeal.

*Id.* at PageID 633-35.

As noted above, a federal habeas court must defer to a state court's decision of a federal constitutional claim unless it is an objectively unreasonable application of clearly established Supreme Court law.  Here the relevant precedent is *Strickland v. Washington,* 466 U.S. 668 (1984), which established the standard for ineffective assistance of counsel, including on appeal.  In this case the Tenth District determined that raising the omitted assignment of error would not have affected the outcome of the appeal because the omitted assignment was without merit.

Guy's Traverse does nothing to suggest that holding was in error.  The Tenth District found Guy never requested a continuance, so he cannot plausibly complain that the trial judge did not grant one.  Guy claims in his Traverse that he did request a continuance, but the record reference he gives does not support that claim.  The factual finding that he did not is entitled to deference under 28 U.S.C. § 2254(d)(2).  He asked for a dismissal, which would not be an appropriate sanction for late disclosure of discovery material.

To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing  Wilson v. Parker*, 515 F.3d 682, 707 (6th  Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*., *citing Wilson.*  If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson.*

Even if the underlying claim had been preserved for habeas review, the Court would find it to be without merit because, as noted above, abuse of discretion by a state judge is not a cognizable claim in habeas corpus.

Because the Tenth District's decision of this claim is a reasonable application of *Strickland*, it is entitled to deference. Ground Thirteen should therefore be dismissed.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition be dismissed. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

October 25, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.